OPINION OF THE COURT
Jasen, J.
We are asked to decide whether it was error for Family Court to deny the petition of a 57-year-old male to adopt a 50-year-old male with whom he shares a homosexual relationship.
Appellants are two adult males who have resided together continuously for more than 25 years. The older of the two, who was 57 years of age when this proceeding was commenced, submitted a petition to adopt the younger, aged 50 at the time. The two share a homosexual relationship and desire an adoption for social, financial and emotional reasons.[1] Following a hearing at which both parties to the prospective adoption testified, and upon receipt of a probation investigation that was favorable to the parties, Family Court denied the petition. That court concluded that the parties were attempting to utilize an adoption for the purposes properly served by marriage, wills and business contracts and that the parties lacked any semblance of a parent-child relationship.
The Appellate Division unanimously affirmed, without opinion, and granted leave to appeal to this court. We now affirm for the reasons that follow.
*236 Our adoption statute embodies the fundamental social concept that the relationship of parent and child may be established by operation of law. (Matter of Upjohn, 304 NY 366, 373.) Despite the absence of any blood ties, in the eyes of the law an adopted child becomes “the natural child of the adoptive parent” with all the attendant personal and proprietary incidents to that relationship. (Carpenter v Buffalo Gen. Elec. Co., 213 NY 101, 108.) Indeed, the adoption laws of New York, as well as those of most of the States, reflect the general acceptance of the ancient principle of adoptio naturam imitatur — i.e., adoption imitates nature, which originated in Roman jurisprudence (Wadlington, Minimum Age Difference As A Requisite for Adoption, 1966 Duke LJ 392, 392-396), which, in turn, served as a guide for the development of adoption statutes in this country. (Howe, Adoption Practice, Issues and Laws 1958-1983,17 Family LQ 173,173-177; Wadlington, Adoption of Adults: A Family Law Anomaly, 54 Cornell L Rev 566, 567; Huard, Law of Adoption: Ancient and Modern, 9 Vand L Rev 743, 748; Matter of Livingston, 151 App Div 1-2.)
In imitating nature, adoption in New York, as explicitly defined in section 110 of the Domestic Relations Law, is “the legal proceeding whereby a person takes another person into the relation of child and, thereby acquires the rights and incurs the responsibilities of parent.” (Emphasis supplied.) It is plainly not a quasi-matrimonial vehicle to provide nonmarried partners with a legal imprimatur for their sexual relationship, be it heterosexual or homosexual. (See, e.g., Stevens v Halstead, 181 App Div 198.) Moreover, any such sexual intimacy is utterly repugnant to the relationship between child and parent in our society, and only a patently incongruous application of our adoption laws — wholly inconsistent with the underlying public policy of providing a parent-child relationship for the welfare of the child (Matter of Malpica-Orsini, 36 NY2d 568, 571-572, app dsmd sub nom. Orsini v Blasi, 423 US 1042; Matter of Upjohn, supra; Howe, op. cit., 17 Family LQ, at pp 176-179; Huard, op. cit., 9 Vand L Rev, at pp 748-749) — would permit the employment of adoption as the legal formalization of an adult relationship between sexual partners under the guise of parent and child.
*237 While the adoption of an adult has long been permitted under the Domestic Relations Law, there is no exception made in such adoptions to the expressed purpose of legally formalizing a parent-child relationship. Adoption laws in this State, first enacted in 1873, initially only provided for the “adoption of minor children by adult persons.” (L 1873, ch 830.) As early as 1915, however, the statute was amended to allow adoption of “a person of the age of twenty-one years and upwards” (L 1915, ch 352) and presently the law simply provides that an unmarried adult or married adults together “may adopt another person” without any restriction on the age of the “adoptive child” or “adoptee”. (Domestic Relations Law, §§ 110, 109, subd 1.) Despite these and other statutory changes since adoption came into existence in New York, the basic function of giving legal effect to a parent-child relationship has remained unaltered.
Indeed, although the statutory prerequisites may be less compelling than in the case of the adoption of a minor, an adult adoption must still be “in the best interests of the [adoptive] child” and “the familial, social, religious, emotional and financial circumstances of the adoptive parents which may be relevant” must still be investigated. (Domestic Relations Law, § 116, subds 2, 3, 4.) Neither the explicit statutory purpose nor criteria have been diluted for adult adoptions, and this court has no basis for undoing what the Legislature has left intact.
Moreover, deference to the narrow legislative purpose is especially warranted with adoption, a legal relationship unknown at common law. (Betz v Horr, 276 NY 83, 86-87; Matter of Thorne, 155 NY 140,143.) It exists only by virtue of the legislative acts that authorize it. Although adoption was widely practiced by the Egyptians, Greeks and Romans, it was unknown in England until the Adoption of Children Act of 1926, more than 50 years subsequent to the enactment of adoption laws in New York. (See, generally, Huard, op. cit., 9 Vand L Rev 943; see, also, Matter of Clark, 87 Cal 638, 641 — adoption was “unknown to the common law” and “repugnant to [its] principles”.) Adoption in this State is “solely the creature of, and regulated by, statute law” (Matter of Eaton, 305 NY 162, 165) and “ ‘[t]he Legislature has supreme control of the subject’ ”. (Carpenter v *238 Buffalo Gen. Elec. Co., supra, at p 107, quoting Matter of Cook, 187 NY 253, 260.) Consequently, because adoption is entirely statutory and is in derogation of common law, the legislative purposes and mandates must be strictly observed.[2] (See Matter of Malpica-Orsini, supra, at p 570; Matter of Santacose, 271 App Div 11, 16; 2 NY Jur, Adoption, § 3.)
Here, where the appellants are living together in a homosexual relationship and where no incidents of a parent-child relationship are evidenced or even remotely within the parties’ intentions, no fair interpretation of our adoption laws can permit a granting of the petition. Adoption is not a means of obtaining a legal status for a nonmarital sexual relationship — whether homosexual or heterosexual. Such would be a “cynical distortion of the function of adoption.” (Matter of Adult Anonymous II, 88 AD2d 30, 38 [Sullivan, J. P., dissenting].) Nor is it a procedure by which to legitimize an emotional attachment, however sincere, but wholly devoid of the filial relationship that is fundamental to the concept of adoption.
While there are no special restrictions on adult adoptions under the provisions of the Domestic Relations Law, the Legislature could not have intended that the statute be employed “to arrive at an unreasonable or absurd result.” (Williams v Williams, 23 NY2d 592, 599.) Such would be the result if the Domestic Relations Law were interpreted to permit one lover, homosexual or heterosexual, to adopt the other and enjoy the sanction of the law on their feigned union as parent and child.
There are many reasons why one adult might wish to adopt another that would be entirely consistent with the basic nature of adoption, including the following: a childless individual might wish to perpetuate a family name; *239 two individuals might develop a strong filial affection for one another; a stepparent might wish to adopt the spouse’s adult children; or adoption may have been forgone, for whatever reason, at an earlier date. (See Wadlington, Adoption of Adults: A Family Law Anomaly, 54 Cornell L Rev 566, at p 571, n 26, and p 578.) But where the relationship between the adult parties is utterly incompatible with the creation of a parent-child relationship between them, the adoption process is certainly not the proper vehicle by which to formalize their partnership in the eyes of the law. Indeed, it would be unreasonable and disingenuous for us to attribute a contrary intent to the Legislature.[3]
If the adoption laws are to be changed so as to permit sexual lovers, homosexual or heterosexual, to adopt one another for the purpose of giving a nonmatrimonial legal status to their relationship, or if a separate institution is to be established for the same purpose, it is for the Legislature, as a matter of State public policy, to do so. Absent any such recognition of that relationship coming from the Legislature, however, the courts ought not to create the same under the rubric of adoption.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. The parties’ affidavit, attached to the petition, states the following reasons for the proposed adoption:
“2. The two of us have lived together for a period of over 25 years. We consider ourselves to be a family, though this might not be true in the traditional sense. Though not the only reason for our petition, our present living arrangements, in a leased apartment, are not formalized and we fear the possibility of eviction; our financial and personal lives are entwined together and though it is not expected, we are concerned about the disposition of our estates upon death and lastly, though not least, we expect to live out our lives together and are concerned about the ability and right under the law for each of us to take care of the other should unexpected events occur.
“3. Though the above reasons indicate financial, economic and practical considerations for our petition, not of any lesser extent and perhaps of more importance, are the many personal, emotional and sentimental reasons for which we present our petition. Simply stated we are a family and seek to formalize such.”

. It is true, as the dissent notes (dissenting opn, at p 241), that this court has stated in the past that “the adoption statute ‘has been most liberally and beneficently applied’ ” (Matter of Malpica-Orsini, 36 NY2d 568, 572). However, a closer look at this court’s opinion in that case reveals that the statute is thusly to be applied only “[i]n harmony with the legislative policy” which is the “fundamental social concept that the relationship of parent and child *** may be established” (id., at pp 571-572). It is clear that we were addressing only the beneficent promotion of the “humanitarian principles” involved in “establishing a real home for a child” (id.) — not a liberal expansion of the underlying purposes and application of the adoption statute beyond that intended by the Legislature.

. The dissent’s reliance on People v Onofre (51 NY2d 476) is misplaced. (Dissenting opn, at pp 239, 241, 241-242.) The issue in this case is not whether private consensual homosexual conduct is legally proscribable — this court has already answered that question in the negative (id.) and the decision today in no way affects or conflicts with that holding. The sole issue addressed today is whether adoption under the Domestic Relations Law is an appropriate means to legally formalize an indisputedly and entirely nonfilial relationship between sexual partners — regardless of whether their relationship is homosexual or heterosexual. The decision today in no way imposes or chooses a “concept of private morality” nor in any way judges the propriety or morality of the parties’ “individual conduct”.