Jasen, J.
(dissenting). I would hold that statutory law and the unqualified use of the term "issue” in the testatrix’s will compels the conclusion that her adopted-out grandson is entitled to an equal share of the trust fund the testatrix created under her will.
Adoption was unknown to the common law and is solely a creature of statute. (See, Matter of Robert Paul P., 63 NY2d 233, 237; Matter of Thorne, 155 NY 140, 143.) New York’s adoption laws, first enacted in 1873, initially provided that an adopted child had no right of inheritance from the adoptive parents (L 1873, ch 830, § 10). Several years later, adopted children were granted such rights in a statute which did not, however, deny any inheritance rights flowing from the natural parents (L 1887, ch 703). With the enactment of the Domestic Relations Law in 1896, the Legisla *158 turc was explicit in providing that an adopted child’s "rights of inheritance and succession from his natural parents remain[ed] unaffected” (L 1896, ch 272, § 64). This statutory provision was, however, ultimately amended in 1963 when virtually all inheritances to an adopted child from the natural family were terminated (L 1963, ch 406, § 1). The Temporary State Commission on the Law of Estates which recommended the amendment noted that the underlying purpose of the statutory provision was "so far as possible” to place the adopted child within the bloodlines of his new family for inheritance purposes while severing such ties with his natural family. (See, L 1963, ch 406, at 1788, n.) Since that time, Domestic Relations Law § 117 (1) has included a provision that "[t]he rights of an adoptive child to inheritance and succession from and through his natural parents shall terminate upon the making of the order of adoption except as hereinafter provided.”[1]
Because the laws regulating adoption and the rights of adopted children are entirely statutory and in derogation of the common law, the legislative provisions must be strictly construed. (Matter of Robert Paul P., supra, at p 238; Matter of Malpica-Orsini, 36 NY2d 568, 570; Carpenter v Buffalo Gen. Elec. Co., 213 NY 101, 108.) Consequently, the statutory termination of the adopted child’s inheritance rights from his natural family must be read narrowly in light of the common law which permitted no such result. Indeed, in 1966, the Domestic Relations Law was again amended in order explicitly to indicate the limited extent to which inheritance rights were terminated and, thereby, clearly to delimit the extent to which the common law had been altered by the 1963 amendment. Section 117 (2) has since provided that: "This section shall apply only to the intestate descent and distribution of real and personal property and shall not affect the right of any child to distribution of property under the will of his natural parents or their natural or adopted kindred whether such natural parent or kindred shall have died heretofore or shall die hereafter or under any inter vivas instrument heretofore or hereafter executed by such natural parents or his or her kindred.” (Emphasis added; L 1966, ch 14, § 1.) The limited purpose of the 1963 amendment was thus clarified upon the recommendation of the Temporary State Commission. The enactment of section 117 (2), as part of the 1966 "Act to amend the domestic relations law, *159 in relation to intestate inheritance from and through an adopted child” (emphasis added), was expressly intended "to provide specifically that [section 117] does not affect any interest an adopted child might have under the will or inter vivas instrument of any member of his natural family, whether made before or after March 1,1964.” (See, L 1966, ch 14, at 14, n.)[2]
Indeed, this court has recently emphasized, albeit in a different context, that section 117 was not intended to sever all ties between the adopted-out child and the natural family. In People ex rel. Sibley v Sheppard (54 NY2d 320, 325) we particularly noted that "the statute recognizes that [some] contacts may exist and that the natural relatives may desire to perpetuate the sense of family, for example, by bequeathing property to the adopted child (see Domestic Relations Law, §117, subd 2).” (Emphasis added.)[3]1 would not, as the majority does, reconstrue section 117 so as to give an overly expansive reach to the provision in subdivision 1 which limits the adopted-out child’s right of inheritance while, simultaneously, giving little or no effect to subdivision 2 which preserves the right to receive under a will. Rather, inasmuch as section 117 (2) merely preserves a right which could not be alienated by means of adoption at common law, I believe it should be given a fuller application, more consistent with its expressly intended purpose.
The foregoing is particularly true under the facts of this case. The testatrix knew that her daughter gave birth to a nonmarital *160 son who had been placed for adoption. Nevertheless, she included no provision in her will explicitly disinheriting this adopted-out grandson. To the contrary, she employed language which is strongly indicative of the opposite intention. The testamentary disposition in question provided that "[u]pan the death of my daughter” the trust was to continue during the life of "issue her surviving”. (Emphasis added.) The testatrix expressed no qualification limiting the "issue” for whose benefit the testamentary trust was to be created.
As is acknowledged by the majority, the intention of the testatrix is the most fundamental and critical factor in construing her testamentary provisions. (Matter of Cord, 58 NY2d 539, 544; Matter of Jones, 38 NY2d 189, 193; Matter of Watson, 262 NY 284, 293.) Here, the testatrix specifically employed the term "issue” without qualification, and there is no indication whatsoever that she intended, by the use of the word "issue” in the will, anything other than that term’s settled and customary meaning.
The EPTL defines "issue” without any restriction or exception for adopted-out children. The entire definition, as codified in EPTL 1-2.10 both at the present time and when the will was executed, provides that:
"(a) Unless a contrary intention is indicated:
"(1) Issue are the descendants in any degree from a common ancestor.
"(2) The terms 'issue’ and 'descendants’, in subparagraph (1), include adopted children.” (Emphasis added.)
The statutory definition is unambiguous and unqualified, and nothing in testatrix’s will renders it less so. "Issue” includes all descendants, and there is simply no language in the testatrix’s will indicating a "contrary intention”. No distinction is made in either the statutory definition or the testamentary language between adopted-out and all other children. No specific individual is named or explicitly excluded in the will. Despite the testatrix’s awareness of her adopted-out grandson, no provision whatsoever was made to treat him differently than her daughter’s other "issue surviving”. In my view, the testamentary language is sufficiently clear and unequivocal to preclude this court’s substitution of its own restrictive interpretation for a settled statutory meaning. (See, Matter of Watson, supra, at p 293.)[4] *161 Finally, the policy considerations invoked by the majority do not appear relevant under the circumstances presented here. While the confidentiality of adoption records is a genuine concern of both the Legislature and this court (see, Domestic Relations Law § 114; Matter of Walker, 64 NY2d 354, 360-361), the underlying purposes thus sought to be promoted are inapplicable to this case. The parties here have at all relevant times been aware of the identity and consanguinity of the testatrix’s adopted-out grandson. Indeed, he was informed of his relationship to the testatrix by both his natural mother and adoptive parents prior to the commencement of this proceeding. Moreover, he communicated with his natural mother prior to her decease.
The general policy of confidentiality of adoption records ought not to effectuate the denial of a lawful testamentary bequest to an adoptee whose adoption was known to the testatrix and about which the adoptee and all other interested parties are well aware. There is no need here for secrecy to protect the adoptee. Indeed, there is neither need nor request here to unseal adoption records, as the details relative to the adoption have all been stipulated. Inclusion of the testatrix’s adopted-out grandson within the class of her daughter’s "issue” requires absolutely no contravention of the public policy invoked by the majority. Thus, the testatrix’s testamentary language and the governing statutory provisions being clear, and no compromise of a countervailing public policy being required to give them effect, the testamentary disposition ought not to be defeated.
Accordingly, it is my view that the Surrogate’s construction of the term "issue” should not be disturbed, and the testatrix’s adopted-out grandson was correctly held to be a beneficiary of the testamentary trust. The order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye and Alexander concur with Judge Titone; Judge Jasen dissents and votes to affirm in a separate opinion in which Judge Meyer concurs.
Order reversed, with costs payable out of the estate to all parties appearing separately and filing separate briefs, appellant’s motion for summary judgment granted, respondent’s motion for summary judgment denied, and matter remitted to Surrogate’s Court, Westchester County, for entry of a decree in" accordance with the opinion herein.

. The phrase "adoptive child” was substituted for "foster child” in 1970, otherwise this particular provision of section 117 (1) has remained unchanged since 1963 (see, L 1970, ch 570, § 10).

. Similarly, in 1984 the Law Revision Commission acknowledged that under existing law adopted-out children may inherit under a will providing for dispositions to a class of persons such as "issue”. In a recommendation to the Legislature concerning the inheritance rights of adopted-out children the Commission noted that: "Under present law, an adopted person cannot inherit in intestacy from or through natural kindred, except a natural parent who is married to an adopting step-parent, even though the adoption was by a step-parent or other person related by blood or marriage and the adopted child remained within the natural family unit (DRL § 117). Conversely, under such law, an adopted person may inherit or benefit as a member of a class (i.e., 'children’, ’issue’, 'nieces’, 'nephews’) named as beneficiaries under a will or inter vivas instrument, even when adopted out of the family by persons unknown to natural kindred and after the adoption papers have been sealed (DRL § 117 [subd 2]; Matter of Best, 116 Misc 2d 365 [1982]; Matter of Bissell, 74 Misc 2d 330 [1973]).” (Emphasis added.) (1984 McKinney’s Session Laws of NY, Memorandum of NY Law Rev Commn, at 3050.)

. We went on to state that: "[t]he bulk of the statute refers to intestacy and succession. Where any mention of other rights and duties is made, it is only in the context of the natural and adoptive parents’ parental duties (see, also, Domestic Relations Law, § 110). Nothing in the statute purports to abrogate the interests of the grandparents, and the child, in continued contacts.” (Id.)

. The nonmarital birth of the adopted-out grandson provides no grounds for a different conclusion. The requirements of both statutory and constitutional law mandate that individuals born out of wedlock be treated equally with "issue” otherwise similarly situated. (See, e.g., EPTL 3-3.3 [b]; 4-1.2; Levy v Louisiana, 391 US 68, 71.)