OPINION OF THE COURT
Denis R. Hurley, J.
In this private placement adoption proceeding commenced pursuant to Domestic Relations Law article 7 (Domestic Relations Law § 109 et seq.) the petitioner Eileen C. requests the entry of an order pursuant to Domestic Relations Law § 116 allowing her to adopt Elizabeth P. S. Upon the filing of the petition and related forms and documents, the matter was calendared before the undersigned in order to inquire whether the requirements of Domestic Relations Law article 7 were met and, further, whether this adoption is permitted under Domestic Relations Law § 110 and attendant decisional law.
*145 The court was constrained to particularly scrutinize this matter in light of the "age” information set forth in the petition of Eileen C., dated October 14, 1986. The petition reveals that the petitioner, Eileen C., who is referred to as the "foster mother”, was born on July 30, 1937 (49 years old). She seeks to adopt Elizabeth P. S., referred to as the "foster child”, who is presently 48 years old, being born on May 27, 1938. The petition states that the foster "child” has been residing with the foster "mother” since 1965, that both are of the same religion, and that an order is requested approving the adoption and changing the name of the "child” to Elizabeth P. S. C.
The face of the petition for adoption thus revealed that this was an "adult adoption”, to wit, the adoption of an adult by another adult, with both adults being female, separated in age by only 10 months.
Domestic Relations Law § 110 specifically provides that "[a]n adult unmarried person * * * may adopt another person.” Note that absent from section 110 is any maximum age limitation for a prospective adoptee. However, the Court of Appeals recently ruled that notwithstanding the apparent permission granted by Domestic Relations Law § 110, the adoption of one adult by another adult may not be approved if the "adoptor” and "adoptee” are not in a parent-child relationship. In Matter of Robert Paul P. (63 NY2d 233, 238 [1984]), the court, when presented with an adoption involving two homosexual adults, stated that:
"Adoption is not a means of obtaining a legal status for a nonmarital sexual relationship — whether homosexual or heterosexual. Such would be a 'cynical distortion of the function of adoption.’ (Matter of Adult Anonymous II, 88 AD2d 30, 38 [Sullivan, J. P., dissenting]). Nor is it a procedure by which to legitimize an emotional attachment, however sincere, but wholly devoid of the filial relationship that is fundamental to the concept of adoption.
"While there are no special restrictions on adult adoptions under the provisions of the Domestic Relations Law, the Legislature could not have intended that the statute be employed 'to arrive at an unreasonable or absurd result.’ (Williams v Williams, 23 NY2d 592, 599.) Such would be the result if the Domestic Relations Law were interpreted to permit one lover, homosexual or heterosexual, to adopt the other and enjoy the sanction of the law on their feigned union as parent and child.”
*146 This court is, of course, bound (and, parenthetically, unequivocally agrees) with the rationale espoused by the State’s highest court. Indeed, an "[a]doption is the legal proceeding whereby a person takes another person into the relation of child and thereby acquires the rights and incurs the responsibilities of parent”. (Domestic Relations Law § 110; emphasis supplied.) An application for approval of an adoption which does not comport with this purpose should be rejected.
In the matter at bar, the concerns and questions that troubled me upon my initial review of the papers submitted were eliminated after the testimony of the parties was heard on November 28, 1986. In what proved to be a moving and enlightening hearing, the petitioner Eileen C. more than convinced the court that this adoption was well within the confines of Domestic Relations Law § 110, and otherwise within the purview of Matter of Robert Paul P. (supra).
Eileen C. is a nun on life leave from the Sisters of Good Shepherd Order. Some 20 years ago, she was assigned to work at Madonna Heights, a private facility for troubled females owned and operated by the Sisters of Good Shepherd. There, she met Elizabeth P. S., a young ward of the State, who had been placed at Madonna Heights after years of other placements in foster homes, psychiatric facilities and youth homes. Elizabeth had been a sexually abused and abandoned child who, due to years of neglect, was rendered illiterate, dependent and emotionally devastated. Although she was then an adult, Elizabeth functioned more as a disturbed child at the time.
From their first meeting, Eileen C. dedicated herself to helping Elizabeth heal the wounds of her past. She counseled her, taught her to read, obtained supportive services for her, and essentially took her into her care. When Eileen left the religious order on leave, she took Elizabeth with her to reside in the C. home in Patchogue. There, the two have since lived together, working at Brookhaven Hospital, with Eileen at all times guiding and leading Elizabeth to the point where she now lives a relatively normal life.
It is sadly apparent that Elizabeth still carries the terrible scars of her youth, although her ongoing weekly therapy has helped her partially overcome her past. She candidly and credibly explained in her own innocent way that she looks upon Eileen C. as her mother and desires to formalize the relationship in what really is the fulfillment of a dream.
*147 In evaluating the present application, consideration was given to the fact that Eileen C. and Elizabeth P. S. are essentially the same age. Normally, a generation separates parent from child. But the absence of such disparity, while significant, is not fatal in an adoption proceeding. Due to the unique facts in this case, the "adoptor” and "adoptee” while chronological contemporaries, nonetheless, occupy the roles of parent and child within the purview of Domestic Relations Law article 7. Eileen maintains the role of parent, providing leadership, guidance, nurturing, care and affection for Elizabeth, her ward. Elizabeth, in turn, looks to Eileen for the structure and maturity that a parent normally gives, finding in her the comfort and direction so desperately needed.
To further assure myself that this relationship is totally outside of the ambit of abuse addressed in Matter of Robert Paul P. (supra), inquiries of a sexual nature were made. As the trier of fact, I find that their relationship is totally devoid of any sexual overtones.
In sum, the court is convinced — despite its initial skepticism —that Eileen and Elizabeth enjoy a, healthy parent-child union within the meaning of Domestic Relations Law article 7. The petition for adoption is not a repugnant attempt to pervert the adoption laws of the State, and it clearly satisfies the policy considerations noted by the court in Matter of Robert Paul P. (supra). Under the circumstances, the petition is approved.
The court is entering the order of adoption simultaneously with the issuance of this decision. The petitioner may contact the court’s adoption bureau forthwith for instructions on obtaining a copy of the amended birth certificate to be issued to Ms. S., now Elizabeth P. S. C.