Titone, J.
(concurring). I agree with the majority’s conclusion that the order of the Appellate Division granting the petition for joint adoption should be reversed. However, I cannot agree with the majority’s choice to recognize the potential existence of a court’s equitable powers to grant an adoption outside of the framework of the adoption statutes and over an adoptive parent’s objection. More critically, because I wholeheartedly believe that, as a matter of law, a child’s best interests are never served by forcing an unwilling and unfit person to assume the intimacy and responsibility of *104 becoming a parent, I cannot join in an analysis such as the majority’s, which holds open that possibility.
Adoption is a . creature of statute (Matter of Seaman, 78 NY2d 451, 455), governed solely by the provisions of Domestic Relations Law article VII. Thus, in this State, the only recognized means of creating the legal relationship of parent and child is to follow the procedures outlined in the adoption statutes (Matter of Robert Paul P., 63 NY2d 233, 236-238). Indeed, given the "delicate and definitive nature of the adoption proceeding, which fundamentally touches and radically alters the lives of all concerned,” adoption courts will require "[p]recise and exacting compliance” with those statutory mandates before granting an adoption (Dennis T. v Joseph C., 82 AD2d 125, 129).
As the majority recognizes (majority opn, at 102), the doctrine of equitable adoption has heretofore never been applied by the courts of this State to create more than a financial obligation upon a party who, for any one of a number of reasons, fails to complete the statutory adoptive process (see, Gavin v Aitken, 258 NY 595; Middleworth v Ordway, 191 NY 404; Matter of Mazzeo, 95 AD2d 91, 93; Wener v Wener, 35 AD2d 50; see also, Annotation, Modern Status of Law as to Equitable Adoption or Adoption by Estoppel, 97 ALR3d 347). Such restrictive application of the courts’ equitable powers in the adoption context has been followed for good reason. "[A]doption imitates nature” and there is nothing more unnatural than to compel an unwilling person to accept the intimacy of parenthood "with all the attendant personal and proprietary incidents to that relationship” (Matter of Robert Paul P., 63 NY2d 233, 236, supra).
Notwithstanding that fact, the majority here suggests that in the "rarest and most exceptional of circumstances” an adoption court has the equitable power, when the preliminary statutory prerequisites to adoption are satisfied, to "grant [a full] adoption over an adoptive parent’s objection” (majority opn, at 100). This conclusion constitutes an unwarranted departure from the time-honored "general rule [that] equity will not enforce a contract involving a personal relationship such as that created by adoption” (Erlanger v Erlanger, 102 Misc 236, 237, affd 185 App Div 888).
Manifestly, these are the least persuasive circumstances in which to recognize a departure from that rule. Beyond the facts of this case, the problems associated with forcing the *105 creation of that permanent legal bond between a child and a prospective adoptive parent who is judicially found "not fit” and "unwilling” to proceed with an adoption are monumental and numerous. For example, the possibility exists that the "fit” adoptive parent who was intended to be the primary caregiver will predecease the "unfit” adoptive parent who is left to assume the children’s daily care. In that tragic scenario, the adoption court will have placed the child directly into the hands of a person who is not equipped to "establish[ ] a real home for a child” (Matter of Malpica-Orsini, 36 NY2d 568, 572) or able to appropriately provide for the child’s emotional or physical needs.
Recognizing the "drastic and hitherto unprecedented” nature of imposing an equitable adoption upon an unwilling party (majority opn, at 102), the majority has declined to impose an equitable adoption in this case. Yet, as the dissent in this case well appreciates, it is hard to imagine a case with facts more rare and extraordinary than these, where the prospective adoptive father, well able to improve the children’s welfare through his wealth and status, has, by his acts and promises, caused two children and his spouse to cross the globe in furtherance of creating a parent-child relationship (see, dissenting opn, at 111). If this is not a "rare and exceptional” circumstance, it is difficult to imagine what facts would warrant invoking equitable powers as the majority now sanctions.
Rather than leaving the door open to some unexplored and heretofore unknown equitable power to force an unwanted parental relationship, I would hold that the statutory scheme forecloses that possibility. The statutory adoption scheme imposes on the adoption court the task of determining whether the proposed adoption is within the best interests of the children before formalizing the relationship (Domestic Relations Law § 116 [4]). In my view, the child’s best interests can never be served by forcing an unfit and unwilling person to fully adopt a child and assume — by operation of law — the legal, moral and financial responsibilities that parenthood involves (see, Matter of Robert Paul P., supra, at 236). The creation of an artificial legal relationship with a person who rejects the child and will avowedly not take steps to provide nurture contravenes one of the fundamental purposes of the best interests inquiry — to ensure that the child is placed in a stable home environment. Accordingly, as a matter of law, the *106 indispensable best interests test cannot be met in these circumstances.
To the extent that concerns are raised about the children’s economic well-being, other viable alternatives to full adoption exist, as even the majority notes (majority opn, at 102-103). In this situation, for example, it is conceivable that appellant’s promises to support the children in the adoption agreements and immigration petition may well provide the basis for an order of financial support sought in a separate proceeding, or in conjunction with the presently pending divorce proceeding. Those options render the majority’s recognition of a potential equitable remedy of full legal adoption unwarranted here.
Under the unprecedented standard adopted by the majority, every adoption court will now be faced with determining whether the rare and exceptional circumstances warranting the imposition of legal parenthood exist on the facts before it. Manifestly, whether to create the adoptive parent-child relationship over an adoptive parent’s objection is a policy decision best left for the Legislature — the body which " 'has supreme control of the subject’ ” of adoption (Carpenter v Buffalo Gen. Elec. Co., 213 NY 101, 107, quoting Matter of Cook, 187 NY 253, 260), and which is best equipped to study the long-term, and assuredly detrimental, effects of that forced relationship upon the welfare of children.