■ In the Matter of JACOB, an Infant. ROSEANNE M. A. et al., Appellants. [620 NYS2d 640] —Order affirmed without costs.

Memorandum: Petitioners, Roseanne M. A. and Stephen T. K., an unmarried couple, filed a petition seeking to jointly adopt a child, who is the natural child of Roseanne. Family Court dismissed the petition because petitioners are unmarried and, pursuant to Domestic Relations Law § 110, adoption by two unmarried persons is not authorized in New York.

"Adoption in this State is 'solely the creature of, and regulated by, statute law' " (Matter of Robert Paul P., 63 NY2d 233, 237, quoting Matter of Eaton, 305 NY 162, 165). "Consequently, because adoption is entirely statutory and is in derogation of common law, the legislative purposes and mandates must be strictly observed" (Matter of Robert Paul P., supra, at 238).

Domestic Relations Law § 110, the statute governing who may adopt or be adopted, provides that "[a]n adult unmarried person or an adult husband and his adult wife together may adopt another person." The statute does not permit adoption by two unmarried persons. Therefore, the decision of Oneida County Family Court (Morgan, J.) is correct, and the order must be affirmed.

All concur except Green, J. P., and Balio, J., who dissent and vote to reverse in the following Memorandum.

Green, J. P., and Balio, J. (dissenting). Petitioners, Roseanne M. A. and Stephen T. K., have lived together in what they describe as a "committed, long-term relationship" since March 1991. On January 12, 1994, they filed a petition seeking to jointly adopt Jacob, who is the natural child of Roseanne. Family Court, without considering whether the proposed adoption would be in the best interests of the child, dismissed the petition because petitioners are unmarried and, based upon a literal reading of Domestic Relations Law § 110, adoption by unmarried persons is not authorized in New York. We conclude that Domestic Relations Law § 110 must be read to permit two unmarried persons to adopt, and thus we respectfully dissent.

Domestic Relations Law § 110 provides that "[a]n adult unmarried person or an adult husband and his adult wife together may adopt another person." The court erred, however, in literally reading that statutory language to bar the adoption of children by unmarried persons.

New York's first adoption law, entitled "An Act to legalize the adoption of minor children by adult persons", authorized the adoption of minor children "by any adult" (L 1873, ch 830,

§ 2). If the adults seeking to adopt were married, that law required them to jointly adopt the child, but the statute did not expressly bar unmarried adults from adopting jointly. The current statutory language authorizing adoption by "[a]n adult unmarried person" first appeared in an 1896 enactment of the adoption law (L 1896, ch 272, § 60). The change in statutory language did not amount to a change in legislative policy, however, because section 8 of the Statutory Construction Law of 1892 (L 1892, ch 677), which was in effect at the time of the 1896 enactment, contained the requirement that "[w]ords in the singular number include the plural, and in the plural number include the singular".

That rule of statutory construction currently appears in General Construction Law § 35. Thus, the statutory phrase "[a]n adult unmarried person" *must* be read to include "adult unmarried persons" unless the "general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended" (General Construction Law § 110).

A literal or strict construction of statutory language contained in our adoption laws is neither mandated by case law nor warranted by public policy. In *Matter of Robert Paul P.* (63 NY2d 233), the Court reiterated that "[a]doption in this State is 'solely the creature of, and regulated by, statute law' " *(Matter of Robert Paul P., supra,* at 237, quoting *Matter of Eaton,* 305 NY 162, 165) and that " ' "[t]he Legislature has supreme control of the subject" ' " *(Matter of Robert Paul P., supra,* at 237, quoting *Carpenter v Buffalo Gen. Elec. Co.,* 213 NY 101, 107). "Consequently, because adoption is entirely statutory and is in derogation of common law, the legislative purposes and mandates must be strictly observed" *(Matter of Robert Paul P., supra,* at 238). The statement that legislative purposes and mandates must be strictly observed does not mean that the statutory language must be strictly construed, as is illustrated by the facts and analysis in *Matter of Robert Paul P. (supra).* In that case, a 57-year-old unmarried homosexual male sought to adopt as his child his 50-year-old homosexual partner with whom he had lived for more than 25 years. Clearly, the petitioner qualified as an adoptive parent because he was an adult unmarried person. Moreover, the "child" qualified as an adoptive child because the law permits the adoption of adults. A literal reading of the statute authorized the adoption. The Court of Appeals upheld the denial of that petition, however, because the proposed adoption was inconsistent with the fundamental object and purpose of the

adoption laws, which are to give effect to the parent-child relationship (see, Matter of Robert Paul P., supra, at 237-238). That Court noted that adoption "is * * * not a quasi-matrimonial vehicle to provide nonmarried partners with a legal imprimatur for their sexual relationship"; that petitioner and his partner were sexual partners, not parent and child; and that application of the adoption laws would be "wholly inconsistent with the underlying public policy of providing a parent-child relationship for the welfare of the child" (Matter of Robert Paul P., supra, at 236).

Thus, in considering whether a petition for adoption should be granted, it is essential that the object and purpose of the adoption law be strictly observed, not that the statutory language be strictly construed. Indeed, "[a]doption laws in the United States are founded upon broad humanitarian principles and the public policy involved in the statutes is one of beneficence" (Matter of Malpica-Orsini, 36 NY2d 568, 571, appeal dismissed sub nom. Orsini v Blasi, 423 US 1042). Where a proposed adoption is "[i]n harmony with the legislative policy * * * the adoption statute has been most liberally and beneficently applied" (Matter of Malpica-Orsini, supra, at 572; see also, Matter of Upjohn, 304 NY 366, 373).

Construing the adoption law to authorize adoption by adult unmarried "persons" is consistent with the object and purpose of providing a parent-child relationship for the welfare of the child (see, Adoption of Tammy, 416 Mass 205, 211-212, 619 NE2d 315, 318-319). Further, the proposed adoption of Jacob is in harmony with that general objective and purpose. Petitioners assert that they are living together in a committed relationship and that they are the de facto parents of Jacob. Unlike the proposed adoption in Matter of Robert Paul P. (63 NY2d 233, supra), the proposed adoption of Jacob would promote, and give effect to, a parent-child relationship. Because a literal or strict construction of the statutory language would contravene the object and purpose of the adoption law, it should not be applied. Instead, the statute should be construed liberally to promote its fundamental purpose.

Research has not disclosed any appellate authority in this State concerning whether the quoted statutory language authorizes adoption by two unmarried persons. Trial courts in New York have divided on that issue (see, Matter of Evan, 153 Misc 2d 844 [unmarried lesbian partners may adopt biological child of one partner]; Matter of Hope, 150 Misc 2d 319 [unmarried man and woman living together cannot adopt natural children of the woman]). Other jurisdictions with adoption

statutes materially similar to New York's statute likewise have divided on that issue *(see, e.g., Adoption of Tammy,* 416 Mass 205, 619 NE2d 315, *supra* [unmarried same-sex partners may adopt the biological child of one partner]; *Adoption of Susan,* 416 Mass 1003, 619 NE2d 323 [same]; *Matter of Pima County Juvenile Adoption Action No. B-13795,* 176 Ariz 210, 859 P2d 1343 [biological mother and her former husband who are not living together cannot adopt]; *In re Jason C.,* 129 NH 762, 533 A2d 32 [unmarried man and wife recently divorced and not living with each other cannot adopt child]).

A review of the circumstances of the parties compels our conclusion that Domestic Relations Law § 110 must be read in a manner that is in harmony with the fundamental purpose of giving effect to a parent-child relationship and that does not categorically deprive a child of an adoption that may be in his best interests.

Stephen K., as an adult unmarried person, is authorized to file a petition to adopt. If he were to file such a petition individually, Domestic Relations Law § 111 (1) (b) would require that the natural parents, including Roseanne A., consent to the adoption. By consenting, Roseanne A. would surrender her rights as a natural parent *(see,* Domestic Relations Law § 117 [1]). Neither Stephen nor Roseanne desires that result. If Stephen and Roseanne were married, Roseanne's consent to Stephen's adoption of Jacob would not relieve Roseanne of her parental rights and duties *(see,* Domestic Relations Law § 117 [1] [d]). Stephen and Roseanne are not married, however, and our adoption laws do not require that a person be married as a prerequisite to adoption. Domestic Relations Law § 110 simply provides that a husband and wife must jointly petition for adoption. Because the relationship between Stephen and Roseanne allegedly is the functional equivalent of a husband-wife relationship, they have filed a joint petition in an attempt to preserve Roseanne's parental rights.

New York law requires that the natural parents of an adoptive child consent to the adoption (Domestic Relations Law § 111 [1] [b]) and provides that, upon adoption, the parental rights and duties of the natural parents are terminated (Domestic Relations Law § 117 [1] [a]). Where an unmarried person seeks to adopt the natural child of the person with whom he or she has been living in a committed relationship, several courts have permitted the adoption of the child without compelling a termination of the partner's parental rights. Those courts have concluded that the operation of such statutory provisions inhibits or precludes adoptions that are in the

best interests of the child and have concluded either that the natural parent's consent falls within the stepparent exemption (Domestic Relations Law § 117 [1] [d]), or that it is unnecessary or that the requirement of consent may be waived *(see, e.g., Adoption of Tammy,* 416 Mass 205, 215-216, 619 NE2d 315, 321, *supra; Matter of Adoption of Child by J.M.G.,* 267 NJ Super 622, 632 A2d 550; *Matter of S. M. Y.,* NYLJ, Dec. 12, 1994, at 34, col 4; *Matter of Caitlin,* 163 Misc 2d 999; *Matter of Evan,* 153 Misc 2d 844, 847-848, *supra* [and cases cited therein]; *Matter of A.J.J.,* 108 Misc 2d 657; *Adoption of B.L.V.D.,* 160 Vt 368, 628 A2d 1271; *but see, Matter of Christine,* NYLJ, June 16, 1994, at 30, col 5; *Matter of Dana,* NYLJ, Jan. 26, 1994, at 26, col 3; *Matter of Kimberlee,* NYLJ, Dec. 29, 1992, at 27, col 5; *In Interest of Angel Lace M.,* 184 Wis 2d 492, 516 NW2d 678). No New York appellate courts have decided that issue.

We perceive no reason in policy or common sense to categorically deny two persons, one of whom is a natural parent and the other of whom qualifies as an adoptive parent in his individual right, the right to jointly adopt the natural child of one of them solely because they are unmarried. As previously stated, marital status is not a prerequisite to adoption. Unmarried persons living together can provide the same stable parent-child relationship and nurturing care that a single parent or married persons can provide *(see, Matter of Evan,* 153 Misc 2d, *supra,* at 847; *Adoption of Tammy, supra).* Where the relationship of the unmarried couple is the functional equivalent of a husband-wife relationship, the petitioners should be treated as though married, and the stepparent exemption should be applied in a manner that does not terminate the parental rights of the natural parent.

An interpretation of the adoption laws that authorizes one unmarried person to adopt but deprives two unmarried persons living together in a functional family setting the right to adopt the child of one of them contravenes the legislative purpose of giving legal effect to a parent-child relationship as well as the humanitarian purpose of fostering parent-child relationships that are within the best interests of the child *(cf., Matter of Malpica-Orsini,* 36 NY2d 568, *supra).*

Thus, Family Court erred in dismissing the petition upon the sole ground that adoption by unmarried persons is not authorized by statute. Because that court dismissed the petition without considering whether adoption by petitioners would be in the best interests of Jacob, we would reinstate the petition and remit the matter to that court for consideration

of the merits of the petition. (Appeal from Order of Oneida County Family Court, Morgan, J.—Adoption.) Present—Green, J. P., Pine, Balio, Callahan and Boehm, JJ.