*398 OPINION OF THE COURT
Joan S. Kohout, J.
On August 1, 2007 the petitioners David B. and Melissa B. filed a petition for the adoption of a child, Jack R, born in January 2007. Filed with the petition are original extrajudicial surrenders of Jack executed by his birth parents. Each of these surrenders was executed in January 2007, three days after Jack’s birth. Also submitted with the petition is an affidavit of financial disclosure.
The court has examined each of the surrenders and declines to accept them because they fail to comply in material respects with Social Services Law § 384, do not encompass the entire agreement of the parties and were not submitted to Erie County Surrogate’s Court for approval as contemplated by terms of the surrenders. Before finalization of this adoption can proceed, it will be necessary for new surrenders to be executed in compliance with the statute or for the birth parents’ parental rights to be terminated.
Additionally, for the reasons which follow, the petitioners must submit a supplemental affidavit of financial disclosure in compliance with 22 NYCRR 205.53 (a), (b) (8).
The Birth Parents’ Surrenders
In January 2007, three days after Jack’s birth, his birth parents executed extrajudicial surrenders of their parental rights with respect to Jack. It appears Jack was placed with the petitioners by Adoption S.T.A.R., Inc., a New York State licensed adoption agency, on the same date that the surrenders were signed. According to the verified schedule sworn to and submitted by the adoption agency, the birth parents selected the petitioners to adopt their child after a review of profiles of prospective adoptive parents presented to them and, after Jack’s birth, surrendered their parental rights to the agency specifically “for placement with the Petitioners.”
In the surrenders, which are substantially identical to one another, the birth parents waive their right to an attorney, state that they have exercised their rights to supportive counseling and have been advised of the alternatives to adoption or of the services which might be available should (s)he choose to raise the child. The birth parents have both checked a box stating that they have selected or will select a specific adoptive parent(s) for their child. The surrenders also state: “I FURTHER *399 UNDERSTAND THAT IF FOR SOME REASON THE ADOPTIVE PARENT BECOMES UNABLE TO TAKE MY CHILD, THE AGENCY WILL CONTACT ME AT MY LAST KNOWN ADDRESS TO PRESENT ME WITH OTHER FAMILIES FROM WHICH TO CHOOSE.”
Additionally, the birth parents have checked a box in a section entitled “POST ADOPTION CONTACT” stating that they have entered into a separate written postadoption contact agreement with the adoption agency and the adoptive parents* The same section also provides two other boxes that the birth parents left unchecked, one stating that court approval of the surrender is waived and a second requesting court approval. If court approval is requested, a box could be checked indicating a waiver of notice of the hearing or, alternatively, requesting to be notified and appear in court.
In this case, both birth parents checked the box stating that (s)he does not want the postadoption contact agreement presented to the court for approval and that (s)he “will rely on the good faith representations made to me and ADOPTION S.T.A.R., INC. by the adoptive parents regarding their compliance with the terms of the agreement” and that “[b]y waiving my right to seek the court’s approval prior to finalization of the adoption, I understand that I will not be entitled to enforcement of the terms of the post adoption contact agreement once the adoption is finalized.”
The surrender also advises the birth parents that an application for approval of the surrender and any adoption proceeding will take place in Erie County Surrogate’s Court. The adoption petition states that no other legal proceedings have been brought, so the court may reasonably presume that no application for approval of the surrender was filed in Erie County.
Legal Discussion
Since Jack was placed with the agency directly for adoption, the legal requirements for the surrenders, as well as post-adoption contact agreements, are governed by Social Services Law § 384. Provisions concerning enforcement of such agreements are contained in Family Court Act § 1055-a regarding enforcement prior to adoption and Domestic Relations Law § 112 regarding enforcement after adoption.
*400 The surrenders here fail to comply with material provisions of Social Services Law § 384 and fail to encompass the entire agreement between the parties. Additionally, the adoption agency failed to seek court approval of the surrenders as outlined in the notice to the birth parents contained in the surrender instrument. These defects when viewed together call into question not only the voluntariness of the surrenders, but whether the surrenders violate the goals and purpose of the adoption statute. As a result, the court declines to accept the surrenders.
Family Court is a court of limited jurisdiction and possesses only such powers as the statutes and Constitution of New York State provide (see NY Const, art VI, § 13; Matter of Bobbijean P., 46 AD3d 12 [4th Dept 2007]; Matter of Borkowski v Borkowski, 38 AD2d 752 [2d Dept 1972]). It has been held that the statutory provisions regarding adoptions are to be strictly observed (see Matter of Robert Paul P., 63 NY2d 233, 238 [1984]). However, in construing adoption statutes, the court must be mindful of the statute’s legislative purpose to promote the child’s best interests (see Matter of Jacob, 86 NY2d 651, 658 [1995]).
Social Services Law § 384 establishes the exclusive method by which a birth parent may surrender his or her parental rights to an authorized agency specifically for the purpose of adoption. The terms of the surrender are outlined in the statute and permit the birth parent to designate a particular person to adopt the child (see Social Services Law § 384 [2] [a], [b]; [3]). Procedures are also established to provide enforceable agreements allowing communication or contact between the birth parent and child after the execution of the surrender and after the finalization of the adoption (see Social Services Law § 384 [b]).
The statute establishes procedures for the execution of surrenders by birth parents before a judge (Social Services Law § 384 [3] [a]) or before one or more witnesses (Social Services Law § 384 [3] [b]).
In this case, the birth parents executed their surrenders before a witness in compliance with Social Services Law § 384 (3) (b) and specifically selected the petitioners to adopt their child. While the surrenders do not contain the names of the petitioners, the surrenders and the verified schedule provided by the agency clearly indicate that the birth parents selected particular people to adopt Jack. Moreover, the surrenders state *401 that the birth parents entered into an agreement for post-adoption contact with the prospective adoptive parents and the agency. The surrenders also state that if the petitioners are unable to accept the child, the birth parents will be notified by the agency and the birth parents will have the right to review additional family profiles and make another choice.
According to the surrenders, the adoption agency, the proposed adoptive parents and the birth parents have entered into an agreement for postadoption contact, which they intend to be exempt from court review and not enforceable in court. Therefore, the terms of the surrender provide the birth parents with no redress should the petitioners or the agency fail to cooperate with the terms of the agreement. This is particularly troubling because the birth parents did not have counsel and because the terms of the agreement are not included in the surrender. Nor are the consequences of an unenforceable agreement spelled out in the surrenders. Finally, the surrenders do not state whether contact or communication is contemplated after execution of the surrenders, but before an adoption is finalized (see Family Ct Act § 1055-a).
Although the surrenders advise the birth parents that the surrenders will be submitted to Erie County Surrogate’s Court for review, no application was made to approve the surrenders. As a result, no judicial review has occurred to determine if post-adoption contact is consistent with the child’s best interests, no law guardian has been appointed and no approval of the surrender has been rendered (see Social Services Law § 384 [2] [b]; [4]).
The existence of a side agreement outside of the surrenders between the adoption agency, the proposed adoptive parents and the birth parents with terms unknown to the court casts a cloud over the surrenders themselves. While the surrenders both include notice that revocation of the surrender must be made within 30 days, that time limit does not apply to an action to set aside a surrender based upon the grounds of “fraud, duress or coercion in the execution of inducement of a surrender” (see Social Services Law § 384 [5]). Agreements made outside of the surrender instrument, especially made by birth parents unrepresented by counsel, leave the court with no way of knowing whether impermissible inducements contributed to the signing of the instrument and leave the surrender open for challenge in the future by the birth parents.
It was precisely the need to avoid unenforceable or impermissibly induced side agreements in adoptions that led the *402 legislature to amend Social Services Law § 384 to provide a procedure for enforceable postadoption agreements that balances the rights of the parents and proposed adoptive parents within the context of the child’s best interests (see L 2005, ch 3, eff Dec. 21, 2005). These amendments were based on Social Services Law § 383-c, which has been successfully used to formalize postadoption contact agreements in foster care cases. By defining the right to enforce postadoption contact agreements and providing judicial oversight to assure that agreements promote the child’s best interests, the statutory framework has reduced or avoided possible litigation.
It is this court’s view that the parties are not permitted to agree to terms that contradict the statutory requirements or the purpose of the statute, which is to clarify and protect the rights of birth parents, prospective adoptive parents and promote the best interests of the child. While Social Services Law § 384 (2) (a) permits an adoption surrender to “be upon such terms and subject to such conditions as may be agreed upon by the parties thereto,” the statute goes on to qualify the general authority of parties to agree to surrender terms by establishing specific mandatory and permissive terms.
It most certainly is in the best interests of the child to avoid litigation regarding the surrender instrument and to require that the protections and procedures relating to postadoption contact contained in Social Services Law § 384 (2) (b) be followed. Those protections include input from the child’s law guardian, participation by the birth parents, if they wish, at the time the court reviews the surrender and the requirement that the court make a best interests determination regarding the agreement for postadoption contact. If the court does not approve the agreement, the birth parents must be given an opportunity to withdraw the surrender.
If these procedures are followed, the contact agreement is enforceable prior to adoption pursuant to Family Court Act § 1055-a and after an adoption pursuant to Domestic Relations Law § 112-b.
All of these statutory provisions, when read as a whole, compel the conclusion that the legislature’s intent in passing this statute was that postadoption agreements be subject to judicial scrutiny and sanctioned only after a best interests review.
Therefore, the court declines to accept the surrenders executed by Jack’s birth parents. The existence of an unenforce *403 able side agreement for postadoption contact made by unrepresented parents, which has not been provided to the court or reviewed by any court, creates doubts as to whether the surrenders were knowingly and voluntarily executed by the birth parents. Moreover, the failure of the adoption agency to apply to Erie County Surrogate’s Court for approval of the surrender means that there has been no best interests review of the surrender.
Despite the failure to provide valid surrenders, the court, however, finds no legal basis to dismiss the petition for adoption, but will schedule a status date at which time the petitioners and a representative from Adoption S.T.A.R., Inc. shall appear. Under the circumstances, the court finds it appropriate to appoint a law guardian for the child.
Affidavit of Financial Disclosure
Based upon its examination of the petitioner’s affidavit of financial disclosure, the court requests a detailed description of the services provided in exchange for the “agency placement fee” of $17,500 (see 22 NYCRR 205.53 [b] [8]). In addition, the court also requests a detailed explanation of the $2,000 in “living expenses” referred to in the affidavit of financial disclosure, so that the court will be assured that each such expense was necessarily incurred “in connection with or as a result of her pregnancy or the birth of the child,” or are allowable housing, clothing or transportation expenses incurred within the statutorily allowable time frame (see Social Services Law § 374 [6]; 22 NYCRR 205.53 [b] [8]).
Each of the descriptions and explanations of the fees set forth above shall be in the form of a supplemental affidavit of financial disclosure, to be submitted on or before the court date set forth below. Each explanation of payment must be accompanied by a description of each payment and its receipt, along with the date of all payments (see 22 NYCRR 205.53 [b] [8]). Accordingly, the court schedules this matter for November 27, 2007 at 1:45 p.m. at which time the petitioners and representatives from Adoption S.T.A.R., Inc. shall appear for a status report (see 22 NYCRR 205.59 [c]). On or before the court date, the court shall be provided with any postadoption contact agreements which either the petitioners and/or Adoption S.T.A.R., Inc. have entered into with the birth parents.
Additionally, the petitioners shall furnish a supplemental affidavit of financial disclosure in compliance with this decision and order on or before the court date set forth above.
*404 Finally, since this court has not previously handled adoptions involving Adoption S.T.A.R., Inc. the court requests a copy of the agency’s New York license to verify that it is an authorized agency (see Social Services Law § 374 [6]; § 371 [10] [a], [c]).

 The court has not received a copy of the contact agreement referenced in the surrenders and the terms of that agreement are not mentioned anywhere in the surrenders.