920 A.2d 155 (2006)
392 N.J. Super. 190
In the Matter of P.B. and S.B. for the ADOPTION OF L.C., an Adult.
Superior Court of New Jersey, Law Division, Family Part, Cumberland County.
Decided September 8, 2006.
*156 Richard H. Daniels, Millville, for P.B. and S.B.
JULIO L. MENDEZ, P.J.F.P.
A married couple, P.B. and S.B., ages fifty and fifty-three, respectively, seek to adopt an unmarried fifty-two-year-old female, L.C.L.C. has resided with the couple for over ten years and wishes to formalize her familial relationship with P.B. and S.B. through adoption and changing her last name to theirs. At the adoption hearing on July 14, 2006, the parties testified as to how they operate as a "team" and desire the adoption in order to make their relationship permanent. L.C. testified that she had been married twice previously, had a troubled relationship with her birth parents and siblings, is currently disabled, and has no valuable personal property. P.B. and S.B. currently rent a two-bedroom mobile home, and testified that they are childless, do not seek to adopt L.C. for inheritance, tax, or other such purposes, but instead seek to make their "family unit" official in the eyes of the law. The parties are assumed to have a platonic relationship, although it should be noted that there was testimony indicating S.B. and L.C. share a bedroom. P.B., S.B., and L.C. presented themselves as a team of three equals.
The issue before the court is whether an adult adoption should be granted when the statutorily-required minimum age difference of ten years between the adopter and adoptee is not satisfied. No case law in this State addresses this issue.
Adoption is solely a creature of statute; it did not exist at common law. In re the Adoption of an Adult by G.V.C., 243 N.J.Super. 651, 653, 581 A.2d 123 (Ch.Div. 1990). In researching adult adoption, this Court has found that there are several common reasons for why one adult would choose to adopt another. The first such reason concerns inheritance. See In re the Adoption of Swanson, 623 A.2d 1095 (Del. 1993); see In the Matter of the Estate of Fenton, 386 N.J.Super. 404, 901 A.2d 455 (App.Div.2006). Creating a parent-child relationship through adult adoption allows the adoptee to have legally recognizable inheritance rights. A second main reason for adult adoption is to formalize an existing parent-child relationship. In the Matter of the Adoption of an Adult by G.V.C., supra, 243 N.J.Super. at 651, 581 A.2d 123. For instance, a step-child who has developed a strong relationship with a step-parent may be adopted as an adult by the step-parent. Similarly, a former foster child who had grown close to the foster family, but was not legally available for adoption as a child, could choose to be adopted as an adult. Another common reason for adult adoption is to provide for *157 perpetual care of the adoptee. See Irving J. Sloan, The Law of Adoption and Surrogate Parenting 55 (1988); see Angie Smolka, Note, That's the Ticket: A New Way of Defining Family, 10 Cornell J.L. & Pub. Pol'y 629, 639 (2001); see Gwendolyn L. Snodgrass. Note, Creating Family Without Marriage: The Advantages and Disadvantages of Adult Adoption Among Gay and Lesbian Partners, 36 Brandeis J. Fam. L. 75, 82 (1997). This allows an adoptee of diminished capacity or abilities some assurance of lifetime care under family insurance and inheritance rights. Finally, in some states adult adoption is used to create a legally binding relationship where marriage is not available. See Peter N. Fowler, Comment, Adult Adoption: A "New" Legal Tool for Lesbians and Gay Men, 14 Golden Gate U.L. Rev. 667 (1984).[1]
In New Jersey, there are three statutory sections concerning adult adoption, N.J.S.A. 2A:22-1, -2 and -3. The first section, N.J.S.A. 2A:22-1, provides the standards for adult adoptions, allowing an unmarried adult or a jointly consenting married couple to adopt an adult person if
[t]he adopting parent or parents are of good moral character and of reputable standing in their community, and . . . the adoption will be to the advantage and benefit of the person to be adopted.
The second section addressing adult adoption, N.J.S.A. 2A:22-2, further stipulates that an adult adoption will not be granted unless: (1) there is an age difference of at least 10 years between adopting parents and the adoptee; and (2) the adoptee has requested the adoption (and change of name, if desired) in writing. The court may waive these requirements if the best interests of adoptee would be promoted by the adoption. Ibid. The third and last section, N.J.S.A. 2A:22-3, deals with inheritance rights of an adopted adult.
Here, the parties arguably do meet many of the above-listed statutory requirements. Pursuant to N.J.S.A. 2A:22-1, the adoptive parents P.B. and S.B. both consent, appear to be of "good moral character and of reputable standing in their community," and the adoption would be "to the advantage and benefit of the person to be adopted" in that L.C. would gain the advantage of finally being considered a legal family member. However, the parties cannot satisfy the age difference requirement of N.J.S.A. 2A:22-2, which states that "such adoption shall not be granted, unless the adopting parent or parents are at least ten years older than the person to be adopted." The prospective adoptive parents P.B., age fifty, and S.B., age fifty-three, are not more than ten years older than the adoptee, L.C., age fifty-two. In fact, adoptee L.C. at age fifty-two is two years older than her potential adoptive father, P.B.
The statutory terms of N.J.S.A. 2A:22-2 do allow the court to waive the age difference requirement, if the court is "satisfied that the best interests of the person to be adopted would be promoted by granting the adoption." Therefore, this court must next consider whether L.C.'s best interests would be promoted by granting this adoption.
But before considering whether waiver would be in the best interests of the adoptee, L.C., the court must first conduct an inquiry into the legislative intent behind this statute and examine existing case law in New Jersey and other jurisdictions that address this issue. First, the court will *158 examine why the New Jersey Legislature chose to enact the age difference requirement. On March 13, 1925, the Legislature first approved "An Act Relating To And Providing For The Adoption Of Adults," whose terms in large part remain unchanged today. N.J.S.A. 2:39-2, 3. However, one major difference was the initial requirement that "the person or persons petitioning aforesaid shall be at least fifteen years older than the person sought to be adopted." Ibid. Notably, the 1925 statute did not provide for judicial waiver of this age difference requirement. In 1977, the Legislature reduced the fifteen year age difference requirement to ten years solely to "conform the age differential" of adult adoption with that of minor adoption.[2]
This court believes that the age difference requirement was intended by the New Jersey Legislature as a method of ensuring that at least a semblance of a parent-child relationship existed between the adult parties. In fact, this court cannot conceive of any other reason why the Legislature would mandate such a requirement but to ensure such a parent-child relationship. Indeed, it is widely accepted that adult adoption law in most states derives from the ancient Roman principle of adoptio naturam imitatur, i.e., adoption imitates nature. Walter J. Wadlington, Minimum Age Difference as a Requisite for Adoption, 1966 Duke L.J. 392 (1966). This principle has formed the basis of legislative safeguards such as the age difference requirement which disallow adoptions between those persons not old enough to be the adoptee's natural parent. It seems reasonable to surmise then that the New Jersey Legislature enacted this requirement to safeguard against illogical adult adoptions, where there is no semblance of a parent-child relationship.
The limited case law in New Jersey concerning adult adoption has not confronted the age difference requirement, or its waiver. Most New Jersey adult adoption cases which have been considered by the Appellate Division concern inheritance rights. These cases analyze the validity of an adult adoption, usually many years after the fact, in the context of an inheritance battle. In one such case, recently decided in July 2006, the Appellate Division concluded that a sixty-year-old woman's adoption of four adults (the orphaned children of her first cousin) was valid under the statutory requirements of N.J.S.A. 2A:22-1 to -3, and allowed the adoptees to take under the trust. In the Matter of the Estate of Maria Fenton, 386 N.J.Super. 404, 901 A.2d 455 (App.Div.2006),
In Fenton, supra, 386 N.J.Super. at 413, 901 A.2d 455, the validity of the adoption was challenged by appellants, inter alia, on the basis that the adoption had been spitefully and improperly undertaken by Maria Fenton for the purpose of diverting the trust fund proceeds. It was noted that *159 Ms. Fenton did not have an extensive relationship with the adoptees prior to the adoption. Id. at 409, 901 A.2d 455. In fact, Ms. Fenton had not even personally met some of the adoptees until close to the time of the adoption, and had only initiated phone calls and letter exchanges once the adoption was contemplated. Ibid. Nevertheless, the Appellate Division found no evidence of the alleged spiteful motivation and determined that Ms. Fenton's statement that she desired a "nice, close family" was a sufficient motivation for the adoption. Id. at 417, 901 A.2d 455. In any event, the Appellate Division found that Ms. Fenton's motivation for the adoption was moot, and emphasized that "New Jersey does not require adoptive parents to indicate their reasons for the adoption," id. at 416, 901 A.2d 455, although it cautioned that courts should always be "mindful of the possibility of fraud." Ibid. (quoting In re the Adoption of P., 193 N.J.Super. 33, 37, 471 A.2d 1220 (Law Div.1983)).
The Appellate Division in Fenton continued to echo the prevailing sentiment of existing New Jersey case law in describing adult adoption as "ordinarily quite simple and almost in the nature of a civil contract." Id. at 415, 901 A.2d 455 (quoting In re the Account of the Tr. of the Estate of Nicol, 152 N.J.Super. 308, 319, 377 A.2d 1201 (App.Div.1977)) (quoting In re the Estate of Griswold, 140 N.J.Super. 35, 52, 354 A.2d 717 (Co.Ct.1976)). The Appellate Division further found that the adult adoption statute "reflects the State's public policy of allowing `adoption[s] between consenting persons . . . when there is a strong benefit to be gained,'" and a "`mutually beneficial adoptive relationship will result.'" Id. at 414, 901 A.2d 455 (quoting In re the Adoption of an Adult by G.V.C., 243 N.J.Super. 651, 653-54, 581 A.2d 123 (Ch.Div.1990)).
Due to the Appellate Division's characterization of adult adoption as practically a civil contract requiring little inquiry into the parties' purpose, it might appear that inquiry into the presence of a parent-child relationship would not be proper. This court agrees that existing case law, including Fenton, supports limited inquiry into the parties' purpose, and thus, by extension, inquiry into the existence of a parent-child relationship, as long as the initial statutory requirements are met. Here, unlike Fenton and all other previously-published cases concerning adult adoption, the court is confronted with a case in which the parties cannot satisfy the statutorily-required age difference, and is asked to waive this requirement. Because this court believes that the age difference requirement was enacted by the New Jersey Legislature as a means of ensuring a semblance of a parent-child relationship, it logically follows that, if this age difference cannot be met, the court must examine whether the parties' purpose is to legally solidify their already-existing parent-child relationship. If the parties do not have a parent-child relationship and are not separated in age by ten years, the adoption petition must necessarily be denied, as it is contrary to the Legislature's intent. Otherwise, courts would be providing a legal stamp of approval to illogical and on some occasions bizarre relationships without any consideration or weight given to the statutory age difference requirement.
Because there is no case law in New Jersey squarely addressing this issue, the court turns for further guidance to the case law of other jurisdictions. The issue has been addressed in our neighboring states of New York and Delaware. And while neither New York nor Delaware have statutory age difference requirements for adult adoption, these jurisdictions *160 have ruled on the issue of whether a parent-child relationship should be in existence between the parties before an adult adoption is granted. As previously explained, this court believes that a parent-child relationship as prerequisite was obviously intended by the New Jersey Legislature through its enactment of the age difference requirement. Therefore, an examination of why these two jurisdictions arrived at opposing conclusions as to whether a parent-child relationship is a requirement to adult adoption, even in the absence of any definitive statutory requirement such as New Jersey's, proves instructive.
In New York, the Court of Appeals has held that where the relationship between the adult parties is utterly incompatible with the creation of a parent-child relationship, an adoption should not be granted by the court. In the Matter of the Adoption of Robert Paul P., 63 N.Y.2d 233, 481 N.Y.S.2d 652, 471 N.E.2d 424 (1984). In this case, a fifty-seven-year-old male sought to adopt his fifty-year-old male homosexual partner. The Court of Appeals decided that adoption is "plainly not a quasi-matrimonial vehicle to provide non-married partners with a legal imprimatur for their sexual relationship, be it heterosexual or homosexual." Id. at 425. The Court found that since adoption was unknown at common law, legislative purposes and mandates must be strictly observed. Id. at 426. The Court of Appeals further found that, under New York's statute, an adult adoption must still be in the adoptee's "best interests," and the relevant "familial, social, religious, emotional, and financial circumstances" of the adoptive parents still must be investigated. Ibid. The Court held that permitting adults to feign a parent and child union through the adoption process could not have been the Legislature's intent. Id. at 427.
In sharp contrast, the Supreme Court of Delaware held that evidence of a parent-child relationship between the parties is not a condition to adult adoption. In re the Adoption of James A. Swanson, an adult, 623 A.2d 1095 (Del.1993). In Swanson, a sixty-six-year-old male sought to adopt his fifty-one-year-old male homosexual companion in order to formalize their emotional relationship and to facilitate their estate planning. Id. at 1096. The Delaware Court explained that most jurisdictions limit judicial inquiry into the motives behind adult adoption, but that adult adoption for the purpose of creating inheritance rights has been expressly approved. Id. at 1097. The Court distinguished the New York Court of Appeal's decision on the basis that New York's adult adoption statute called for an examination into the best interests of the adoptee, whereas Delaware's statute has no such requirement. Id. at 1098-99. Essentially, the Delaware Court held even adult lovers may adopt one another as long as the primary motive behind the adoption is for "economic reasons." Id. at 1099.
Like New York's statute requiring inquiry into the adoptee's best interests, New Jersey's adoption statute similarly requires the trial court to inquire into the adoptee's best interests if the statutory requirements are not met and the parties seek waiver of these requirements. N.J.S.A. 2A:22-2. As discussed above, the New York Court of Appeals found this statutory requirement to be evidence of the Legislature's intent for adult adoption to serve as a way for parties to formalize their parent-child relationship. This court concludes that N.J.S.A. 2A:22-2 supports a similar finding. The New Jersey State Legislature can likewise be presumed to have intended adult adoption to require a pre-existing parent-child relationship, especially *161 when the age difference requirement is not met, due to the best interests analysis required before waiver can be granted.
In the instant case, not only is the age difference requirement not met, the adoptee, L.C., is older than one of her potential adoptive parents. Therefore, this court finds that inquiry into L.C.'s best interests  which entails inquiry to the existence of a parent-child relationship  is necessary to determine if this statutory mandate should be waived. The court can discern no reason why the parties desire the adoption other than to obtain legal recognition for their emotional bond. Each party testified that the three operate as a "team" of equals. The court saw no evidence of a parent-child relationship between the parties, and the parties never characterized their relationship as such. Further, the court finds no other compelling evidence as to why it would be in L.C.'s best interests to grant the adoption and waive the age difference requirement. The parties testified that they did not seek the adoption to establish inheritance rights or to address issues of perpetual care, but to solidify their emotional connection as a family.
The court understands that this adoption factored as an important emotional milestone in the parties' relationship, and that the parties appear to want nothing more than to have their relationship made "official" in the eyes of the law. This court's denial of the adoption does not lessen the significance of the parties' relationship. Indeed, "[t]he law does not require or prohibit love or kindness. It deals only with legal rights and duties." In re Adoption of A., 118 N.J.Super. 180, 183, 286 A.2d 751 (Co.Ct.1972). P.B. and S.B. have the right to treat L.C. as a family member of equal standing without adopting her. They may also provide her with love and affection or provide for her in their wills. If L.C. wants to change her last name to theirs, she may do so without an adoption decree.
Thus, for the substantive and public policy reasons discussed above, this court denies the petition for adoption.
NOTES
[1] Gay and lesbian couples routinely use adult adoption as such a vehicle in California and various other states. This is a moot issue in New Jersey because of the newly enacted domestic partnership act, N.J.S.A. 26:8A-1 to -13.
[2] The full text of the Assembly Statement No. 541, dated June 20, 1977, reads as follows:

This bill amends the law concerning adoption of adults. Under present law persons who are adopting a minor must be at least 10 years older than the minor, but persons who are adopting an adult must be at least 15 years older than the adult. This can result in situations whereby a 27-year-old may adopt a 17-year-old, while a 28-year-old may not adopt an 18-year old.
This bill would require a 10 year age differential between the adopter and the adoptee regardless of whether the person to be adopted was a minor or an adult.
Furthermore, the court would be allowed discretion in waiving this 10 year differential if it determined that such waiver would be in the best interest of the person being adopted.
[Assembly Institutions, Health and Welfare Committee Statement to A. 541 (June 20, 1977).]