# IN THE SUPREME COURT OF THE STATE OF DELAWARE

TESLA INC., §
§ No. 375, 2022
Appellant, §
§
v. § Court Below: Superior Court
§ of the State of Delaware
THE DELAWARE DIVISION OF §
MOTOR VEHICLES, § C. A. No. N21A-09-001
§
Appellee. §

Submitted: March 15, 2023
Decided: May 15, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, Justices; and **NEWELL**, Judge,[1] constituting the Court en Banc.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Kelly E. Farnan, Esquire, Tyler E. Cragg, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, Felicia H. Ellsworth, Esquire, Sofie C. Brooks, Esquire, WILMER CUTLER PICKERING HALE AND DORR LLP, Boston, Massachusetts, Ari Holtzblatt, Esquire (*argued*), Leon T. Kenworthy, Esquire, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., *for Appellant Tesla Inc.*

George T. Lees III, Esquire (*argued*), DELAWARE DEPARTMENT OF TRANSPORTATION, Dover, Delaware, *for Appellee The Delaware Division of Motor Vehicles*.

Grayson P. Sundermeir, Esquire, FISH & RICHARDSON P.C., Wilmington, Delaware, Thomas H. Reger II, Esquire, FISH & RICHARDSON P.C., Dallas, Texas *for Professors Roger D. Blair, Henry N. Butler, Steve Calandrillo, Nicholas Economides, Herbert Hovenkamp, Max Huffman, Kathryn Judge, Marina Lao,*

---

[1] Sitting by designation under Art. IV, § 12 of the Delaware Constitution and Supreme Court Rule 2(a) to fill the quorum as required by Art. IV, § 12 of the Constitution.

*Mark A. Lemley, Stan Liebowitz, Geoffrey A. Manne, John O. McGinnis, Heather Payne, Michael Sykuta, Alexander Volokh, Samuel N. Weinstein, Lawrence J. White, and Joshua D. Wright as amici curiae in support of Appellant.*

**SEITZ**, Chief Justice:

Tesla Inc. appeals from a Superior Court judgment upholding a Division of Motor Vehicles' ("DMV") decision denying Tesla's application for a new dealer license. The Superior Court agreed with the DMV Director that the Delaware Motor Vehicle Franchising Practices Act ("Franchise Act") prohibited Tesla, as a new motor vehicle manufacturer, from selling its electric cars directly to customers in Delaware.

We reverse the DMV Director's decision and the Superior Court judgment and remand for further proceedings consistent with this opinion. The General Assembly enacted the Franchise Act to address the disparity in bargaining power which permitted new motor vehicle manufacturers to exert economic pressure over their franchises. Its definitions exclude Tesla and its direct sales model, where new electric cars are not sold through franchised dealers in Delaware.

I.

A.

The facts are not in dispute. Tesla designs, develops, manufactures, and distributes new electric vehicles. Unlike traditional auto makers, Tesla sells its vehicles directly to consumers without using independent franchise dealers. In 2019, Tesla filed with the DMV its first application for a dealer license. The record does not contain what became of this application. Following submission, however, the

3

DMV permitted Tesla to open a new car gallery in the Christiana Mall. The gallery allows customers to view Tesla vehicles, but Tesla could not sell its cars from an in-state store.

In December 2020, Tesla submitted a second application for a dealer license to sell its electric cars directly to consumers in Delaware. The DMV's Chief of Compliance and Investigations Unit denied Tesla's application. According to the DMV Chief, the Licensing Act[2] requires that the applicant comply with Delaware law before an application can be granted. She found that Tesla's application did not comply with Delaware law because the Delaware Franchise Act[3] "prohibits a manufacturer from directly or indirectly owning an interest in a dealer or dealership" or from "act[ing] in the capacity of a dealership."[4] The DMV Chief concluded that Tesla, as a new motor vehicle manufacturer, would violate the Franchise Act if it sold cars directly to consumers from a store in Delaware.[5]

B.

Tesla requested a hearing before an administrative hearing officer, who issued a report and recommendation that upheld the denial.[6] According to the hearing officer, the Licensing Act required the DMV to ensure that the applicant complies

---

[2] 21 *Del. C.* § 6300 *et seq.*
[3] 6 *Del. C.* § 4913(b)(14).
[4] App. to Opening Br. at A30.
[5] *Id.* at A30–31.
[6] *Id.* at A403.

4

with the laws of Delaware and other states. Under the Franchise Act, with limited exceptions, a manufacturer cannot own, operate, control or act as a dealer. Even though she found that Tesla and its direct-to-consumer sales model did not meet the definition of a "new motor vehicle dealer" under the Franchise Act, she ultimately concluded that Tesla was still a "manufacturer" under a separate definition in the Franchise Act. As a manufacturer, the hearing officer concluded, Tesla could not sell new vehicles directly to Delaware consumers. The DMV Director agreed with the hearing officer's conclusion and upheld the denial.[7]

## C.

Tesla appealed to the Superior Court, which affirmed the denial. First, the court found that the DMV could rely on the Franchise Act to deny Tesla a new dealer license because "any violation of the Franchis[e] Act would be a violation of the laws of this State" under the Licensing Act.[8] Turning to the Franchise Act, the court agreed with Tesla that (1) Tesla's business model and its lack of franchises was likely not contemplated by the statute; (2) "Tesla's vehicles do not qualify under the [Franchise Act's] definition of a new motor vehicle;" and (3) Tesla is not a "new

---

[7] *Id.* at A404–05.
[8] *Tesla, Inc. v. Delaware Div. of Motor Vehicles*, 2022 WL 4483222, at *5 (Del. Super. Sept. 23, 2022).

motor vehicle dealer" as defined by the Franchise Act because "it does not enter into franchise agreements with third party entities."[9]

Despite these observations favorable to Tesla, the court concluded that "the only Statute which clearly defines a new motor vehicle is the Franchis[e] Act" and therefore Tesla "cannot sell its cars in [Delaware] because the only way for a dealer to sell new cars is for those cars to be considered new motor vehicles."[10] In other words, Tesla would not be selling new motor vehicles as defined by the Franchise Act. It could not, therefore, get a license to sell new motor vehicles under the Licensing Act. The court also reasoned that because the Franchise Act does not explicitly use the term "non-franchising manufacturers," the court "cannot carve out an exception for [such] manufacturers."[11]

## II.

On appeal, Tesla makes two primary arguments – first, the DMV erred when it relied on the Franchise Act to deny Tesla a license under the Licensing Act, and second, the court misinterpreted the Franchise Act. "When an administrative decision is on appeal from the Superior Court, 'this Court examines the agency's decision directly.'"[12] We must determine "'whether the agency ruling is supported

---

[9] *Id.* at *5–6.
[10] *Id.* at *6.
[11] *Id.* at *5.
[12] *Delmarsh, LLC v. Envtl. Appeals Bd.*, 277 A.3d 281, 289 (Del. 2022) (quoting *Del. Solid Waste Auth. v. Del. Dep't of Nat. Res. & Envtl. Control*, 250 A.3d 94, 105 (Del. 2021)).

by substantial evidence and is free from legal error.'  Absent any abuse of discretion, 'the decision of the agency must be affirmed.'  And while '[s]tatutory interpretation is ultimately the responsibility of the courts [a] reviewing court may accord due weight, but not defer, to an agency interpretation of a statute administered by it.'"[13] The DMV administers the Licensing Act but not the Franchise Act.

## A.

Tesla applied for a new dealer license under the Licensing Act.  The Act provides that no person may "carry on or conduct the business of buying, selling or dealing in new or used motor vehicles unless issued a dealer license by the [DMV]."[14]  The Act defines "dealer" and "vehicle" broadly and includes Tesla and its electric cars.[15]

Under section 6312 of the Licensing Act, if the DMV is "satisfied that the applicant is of good character and, so far as can be ascertained, the applicant has complied with and will comply with, the laws of this and other states, the [Division] shall approve the application and issue a dealer license."[16]  Section 6313 continues with specific grounds for which a license or its renewal "may be denied, suspended,

---

[13] *Delmarsh*, 277 A.3d at 289 (alterations in original) (first quoting *Del. Solid Waste*, 250 A.3d at 105; then quoting *Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 381, 382 (Del. 1999)).
[14] 21 *Del C*. § 6302(a).
[15] *Id.* §§ 6301(2), (3), (9).
[16] *Id.* § 6312.

or revoked,"[17] and lists specific Delaware Code titles that implicate motor vehicle or tax laws. The Franchise Act is not listed, but one of the grounds for denying a renewal application or suspending or revoking an existing license, refers back to "the standard set forth in § 6312."[18]

Tesla argues that the listing of specific Delaware Code titles in section 6313 limits the general "compliance with laws" statement. But section 6313(9) explicitly refers to the "compliance with laws" requirement in section 6312 to deny a renewal, or to suspend or revoke an existing license. And the synopsis of the bill explains that section 6313 "ensures that the same character and conviction review standards applied during initial application of a dealership license are also applied to the renewal process."[19] Finally, if Tesla's application violated the Franchise Act, it would be strange for the DMV to ignore a violation of Delaware law and issue a license, only to have the dealer license revoked through some other process.[20]

---

[17] *Id*. § 6313. Section 6313 was amended while this appeal was pending. *See* 2022 Delaware Laws Ch. 511 (H.B. 401). The amendment does not impact the parties' arguments or our disposition. This opinion cites the current version of section 6313.

[18] 21 *Del. C.* 6313(9).

[19] Del. H.B. 342, 149th Gen. Assem. Summary (2017).

[20] Tesla argues that section 6312 should not be read broadly to include all the laws in this State. The question here, however, is whether sections 6312 and 6313 include the Franchise Act. Even if "laws of this and other states" are not read broadly, we interpret the general words as applying to "things of the same general kind or class as those specifically mentioned." *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1265 (Del. 2004). The Franchise Act, as a statute regulating the relationship between motor vehicle manufacturers and dealers, is of the same kind or class as the motor vehicle statute specifically listed in section 6313. 21 *Del. C.* 6313(4) (listing Title 22).

8

The Superior Court held correctly that the DMV can deny a dealer license for a violation of the Franchise Act. The next question is whether Tesla's direct sales model violates the Franchise Act.

B.

In *Future Ford Sales, Inc. v. Pub. Serv. Comm'n of State of Delaware*, we considered the legislative intent behind the Franchise Act:

> The [Franchise] Act, like its counterpart at the federal level and in a large number of states, is remedial legislation intended to regulate the relationship between motor vehicle dealers and manufacturers. Historically, the gross disparity in bargaining power permitted motor vehicle manufacturers to exert economic pressure over franchises which prompted Congress and many states to enact regulatory legislation to prevent such abusive practices.[21]

The General Assembly made it clear that the Act was intended to regulate manufacturers and their franchises "to prevent frauds, impositions and other abuses upon [Delaware] citizens."[22]

For the most part, the Franchise Act provisions regulate the relationship between a "manufacturer," on the one hand, and a "dealer" on the other hand. The Act addresses: termination, cancellation, nonrenewal, sale, and succession to ownership of franchises between manufacturers and dealers;[23] manufacturers' obligations to compensate dealers for predelivery, warranty, and other services and

---

[21] 654 A.2d 837, 842 (Del. 1995).
[22] 6 *Del. C.* § 4901.
[23] *Id.* §§ 4906–11.

9

to indemnify certain losses incurred by dealers;[24] the allocation of risk of loss in transportation between manufacturers and dealers;[25] the validity of certain agreements between manufacturers and dealers,[26] manufacturers' obligations in establishing or relocating dealerships;[27] and consumer data provided by dealers to manufacturers.[28] Section 4913, which contains the direct sale restriction at issue, has a list of unlawful acts by manufacturers against dealers.[29]

It bears repeating that the Franchise Act regulates the business relationship between a manufacturer and a dealer. As explained below, neither the statutory text nor the legislative history support the DMV's interpretation that the Franchise Act is intended to prohibit the direct sales model, which does not involve such business relationships.

## C.

When interpreting a statute, "the fundamental rule is to ascertain and give effect to the intent of the legislature."[30] To do so, we start with the statutory text to

---

[24] *Id.* §§ 4903, 4905.
[25] *Id.* § 4904.
[26] *Id.* § 4914.
[27] *Id.* § 4915.
[28] *Id.* § 4919.
[29] For example, a manufacturer is prohibited from coercing dealers to order new motor vehicles, participate in an advertising campaign, or enter into an agreement with the manufacturer, delaying or failing to deliver vehicles to dealers, refusing to disclose certain information to dealers, and increasing prices of the vehicles that dealers had ordered. *Id.* §§ 4931(a)–(b).
[30] *Delmarsh*, 277 A.3d at 290 (quoting *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985)).

determine if it is ambiguous.[31]  "When the intent is reflected by unambiguous language in the statute, the language itself controls."[32]  And "the court's role is limited to an application of the literal meaning of those words."[33]

Section 4913(b)(14) of the Franchise Act provides that a "manufacturer" shall not "directly or indirectly own an interest in a dealer or dealership; or operate or control a dealer or dealership; or act in the capacity of a dealer."[34]  Under the Act, a "manufacturer" means "any person, resident or nonresident, who manufactures or assembles new motor vehicles."[35]  "New motor vehicle" in turn is defined as:

> *[A] vehicle which has been sold to a new motor vehicle dealer* and which has not been used for other than demonstration purposes and on which the original title has not been issued from the new motor vehicle dealer.[36]

The Act further defines "new motor vehicle dealer" or "dealer" as:

> [A]ny person or entity engaged in the business of selling, offering to sell, soliciting or advertising the sale of new motor vehicles and who holds, or held at the time a cause of action under this chapter accrued, *a valid sales and service agreement, franchise or contract granted by the manufacturer or distributor* for the retail sale of said manufacturer's or distributor's new motor vehicles.[37]

---

[31] *Leatherbury v. Greenspun*, 939 A.2d 1284, 1288 (Del. 2007).

[32] *Ross v. State*, 990 A.2d 424, 428 (Del. 2010).

[33] *Leatherbury*, 939 A.2d at 1288 (quoting *In re Adoption of Swanson*, 623 A.2d 1095, 1096–97 (Del. 1993)).

[34] 6 *Del. C.* § 4913(b)(14).  There are certain exceptions that are not relevant here.

[35] *Id.* § 4902(7).

[36] *Id.* § 4902(8)b (emphasis added).

[37] *Id.* § 4902(9) (emphasis added).

11

When the definitions are read together, a "manufacturer" under the Franchise Act manufactures or assembles "new motor vehicles" that have been sold to a "new motor vehicle dealer" who holds "a valid sales and service agreement, franchise, or contract granted by the manufacturer or distributor for the retail sale."[38] Tesla's electric cars will not be sold to a dealer that holds a valid sales contract by Tesla, and therefore it is not a "manufacturer."

The hearing officer agreed with Tesla that, due to its direct sales model, it is not a "new motor vehicle dealer" under the Franchise Act.[39] The Superior Court also agreed that Tesla's vehicles are not "new motor vehicles," meaning they have not been sold to "dealers."[40] Neither the DMV nor the Superior Court explained, however, how Tesla could nonetheless be a "manufacturer" under the definitions in the Franchise Act, which specifically defines a manufacturer as one that manufactures "new motor vehicles" that are sold to a new motor vehicle dealer holding a franchise or similar agreement.

The hearing officer relied on a Tesla hearing exhibit, where Tesla listed itself as a manufacturer.[41] Admittedly, Tesla is an automobile manufacturer. The General Assembly, however, can be its own lexicographer and define what it means to be a

---

[38] *Id.* §§ 4902(8)b, 4902(9).
[39] App. to Opening Br. at A402 (Hearing officer's report and recommendations).
[40] *Tesla, Inc.*, 2022 WL 4483222, at *6.
[41] App. to Opening Br. at A402, A150 (Hearing exhibit).

12

manufacturer for purposes of the Franchise Act. When a statute specifically defines a term, even if it is different than its ordinary meaning, the Court will apply the definition used by the General Assembly.[42]

The Superior Court also relied on the fact that the Franchise Act does not use the term "non-franchising manufacturer," and the court should not carve out exceptions to the statute. But the Act defines "manufacturer" in a specific way that excludes Tesla. By applying the statutory definitions, we are not carving out an exception to the statute.

Finally, the definition of "dealer" in the Franchise Act contrasts sharply with that under the Licensing Act, which would include Tesla and other manufacturers who sell directly to consumers.[43] And defining "manufacturer" and "dealer" in relation to each other is consistent with the Franchise Act's purpose of protecting dealers from a manufacturers' unfair practices.

D.

The DMV argues that the Franchise Act is intended to regulate all manufacturers even if they use the direct sales model. It points to the declaration of purpose in the Franchise Act, which provides:

---

[42] *Fox v. Standard Oil Co. of N.J.*, 294 U.S. 87, 95–96 (1935) (refusing to accept a term's ordinary meaning where it is defined by the statute); *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020) (same); *Stiftel v. Malarkey*, 384 A.2d 9, 21 (Del. 1977) ("It is an accepted principle of statutory construction that, if the legislature does define the coverage of a statute by providing a definitional section, a court will be bound by that definition.") (Quillen, J., dissenting).
[43] 21 *Del. C.* §§ 6301(2)–(3).

13

[T]he distribution and sale of vehicles within this State vitally affects the general economy of the State and the public interest and the public welfare, and that in order to promote the public interest and the public welfare, and in the exercise of its police power, *it is necessary to regulate vehicle manufacturers*, distributors or wholesalers and factory or distributor representatives, and to regulate franchises issued by the aforementioned who are doing business in this State in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this State.[44]

The declaration of purpose, however, is subject to the same, specific definition of "manufacturer" as other provisions in the Act.[45] Further, the legislative history of section 4913(b)(14) supports a narrower scope of the direct sale restriction.

The General Assembly enacted section 4913(b)(14) in 2001.[46] According to the synopsis of the bill, "a manufacturer . . . will not compete directly with *its* dealers."[47] The possessive pronoun "its" supports our interpretation that the restriction only covers manufacturers that have their own dealers.

Other states have relied on similar language to exclude the direct sales model from franchising restrictions. For instance, in *Arizona Auto Dealers Association v. Arizona Department. of Transportation*, a case challenging Tesla's direct sales in Arizona, the court pointed to the use of "its" in the Arizona franchise act.[48] The relevant provision provides that a manufacturer "shall not directly or indirectly

---

[44] 6 *Del. C.* § 4901 (emphasis added).
[45] *Id.* § 4902 (stating the definitions are for terms "[a]s used in this chapter").
[46] Del. S.B. 80, 141st Gen. Assem. Summary (2001).
[47] *Id.* (emphasis added).
[48] 2017 WL 9753918, at *4 (Ariz. Super. Mar. 3, 2017).

14

compete with or unfairly discriminate among *its* dealers."[49] The court found that the use of "its" means that the provision "ha[s] no application to manufacturers that do not have any of their own dealers with which to compete or discriminate against."[50] The court then held that the franchise statute does not prohibit Tesla from obtaining a dealer license within the state.[51]

E.

The DMV also contends that the General Assembly should decide whether and how Tesla can sell directly to the consumers. It points to (1) a proposed amendment to section 4913(b)(14) that carves out an exception for electric vehicles manufacturers and (2) the fact that many other states took legislative action and amended similar restrictions to allow Tesla and similar manufacturers to engage in direct sales.

The proposed amendment does not prove that our plain language reading is incorrect. "Proposed legislation has no place in statutory construction. Before being adopted, legislation is open to free and vigorous debate. As proposed legislation is debated, minds can be changed."[52] The outcome of the proposed amendment is unknown at this time. The proposed amendment may reveal the current

---

[49] *Id.* (emphasis added) (quoting A.R.S. § 28-4460(A) (2017)).
[50] *Id.*
[51] *Id.* at *1, *4.
[52] *Pizzadili P'rs, LLC v. Kent Cnty. Bd. of Adjustment*, 2016 WL 4502005, at *10 (Del. Super. Aug. 26, 2016), *aff'd sub nom. LTR Props., LLC v. Pizzadili P'rs, LLC*, 157 A.3d 757 (Del. 2017).

15

understanding of a few members of the legislative branch of government but does not yet represent the General Assembly as a whole.

The fact that other states took legislative action to amend their franchise laws also carries no weight in our statutory interpretation. The states that the DMV lists – Pennsylvania, Maryland, New Jersey, and North Carolina – all had statutes that contained expansive definitions that would include Tesla within the direct sale restriction absent an amendment.[53] The same is true for Michigan,[54] where Tesla settled with the state to allow Tesla to deliver vehicles to residents in Michigan so long as the legal title for the vehicles is transferred outside the state.[55] The expansive definitions in those state statutes are absent in the Delaware statute.

---

[53] Pennsylvania's statute defines "manufacturer" to encompass any person who manufactures or assembles "vehicles" and defines "vehicle" to include "[e]very devise which is or may be moved or drawn upon a highway." 63 Pa. Stat. Ann. § 818.102 (West). Maryland's statute prohibits a "manufacturer" from "sell[ing] a new vehicle to a retail buyer" and does not seem to define "manufacturer" or "new vehicle." Md. Code Ann., Transp. §§ 15-101, 15-305 (West). New Jersey's statute prohibits "motor vehicle franchisor" from selling motor vehicles to consumers. N.J. Stat. Ann. § 56:10-27 (West). It defines "motor vehicle franchisor" to include those manufacture "new motor vehicles" and defines broadly "new motor vehicle" to mean "a newly manufactured motor vehicle." *Id.* § 56:10-26. North Carolina's statute defines "manufacturer" to include a person who manufacturers or assembles "new motor vehicles" and defines the latter to mean motor vehicles that have never been subject to an approved sale except for a sale between manufacturers and dealers or between dealers. N.C. Gen. Stat. Ann. § 20-286 (West).

[54] The Michigan statute contains a similar direct sale restriction as the Delaware statute and a similar definition for "manufacturer." Mich. Comp. Laws Ann. §§ 445.1564(5), 445.1574(1)(h) (West). The Michigan statute, however, defines "new motor vehicle" broadly to mean motor vehicle that "*is in the possession of the manufacturer . . . or* has been sold only to a new motor vehicle dealer and for which the new motor vehicle dealer has not issued an original title." *Id.* § 445.1565(1) (emphasis ended).

[55] App. to Opening Br. at A310 (Joint stipulation in *Tesla, Inc. v. Benson at el.*, Case No. 16-cv-1158 (W.D. Mich. Jan. 22, 2020)).

16

F.

The DMV claims that a direct sale prohibition on all manufacturers could prevent fraud and abuse and protect Delaware citizens, and that this Court should not second guess the General Assembly's policy determination. The DMV does not, however, explain how fraud or abuse are prevented by a direct sales ban under the Franchise Act. The only authority the DMV cites is *International Truck & Engine Corp. v. Bray*.[56] That case and a prior case, *Ford Motor Co. v. Texas Department of Transportation*,[57] involve constitutional challenges to the direct sale restriction in Texas's motor vehicle statute. The challenges were brought by manufacturers who wanted to sell or market vehicles directly to consumers.[58] The Fifth Circuit upheld the statute and refused to "second-guess the empirical judgments of lawmakers concerning the utility of [the] legislation."[59]

The cases are distinguishable from the current case. In the Fifth Circuit cases, the manufacturers had their own dealers in Texas and were found by the court to be able to "wield power" over their dealers[60] and "remain in a superior market position to [their] dealers."[61] The court found that "a reasonable legislator could believe [the

---

[56] 372 F.3d 717, 729 (5th Cir.), *opinion corrected on denial of reh'g*, 380 F.3d 231 (5th Cir. 2004).
[57] 264 F.3d 493, 498 (5th Cir. 2001).
[58] *Id.* at 498; *Int'l Truck & Engine*, 372 F.3d at 718–19.
[59] *Int'l Truck & Engine*, 372 F.3d at 728 (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92 (1987)); *Tex. Dep't of Transp.*, 264 F.3d at 504, 511.
[60] *Int'l Truck & Engine*, 372 F.3d at 729.
[61] *Tex. Dep't of Transp.*, 264 F.3d at 504.

direct sale restriction] would further the State's legitimate interest in preventing manufacturers from utilizing their superior market position to compete against dealers."[62]  The cases do not provide a policy rationale for a total direct sale ban for manufacturers who do not have dealers.

In addition, courts in other states have found their franchise statutes do not protect dealers from competition with manufacturers of other brands.  The Massachusetts Supreme Judicial Court, for example, rejected car dealers' challenge to Tesla's sales efforts, and found that "[c]ontrary to the [dealers'] assertion, . . . the type of competitive injury they describe between unaffiliated entities is not within the statute's area of concern."[63]  The court also found the direct sale restriction was "intended and understood only to prohibit manufacturer-owned dealerships when, unlike Tesla, the manufacturer already had an affiliated dealer or dealers in Massachusetts."[64]  Similarly, a New York court found the increase in interbrand business competition was not an injury within the zone of interests protected by the franchise statute.[65]

---

[62] *Id*.; *Int'l Truck & Engine*, 372 F.3d at 728–29.
[63] *Massachusetts State Auto. Dealers Ass'n, Inc. v. Tesla Motors MA, Inc.*, 15 N.E.3d 1152, 1159 (Mass. 2014).
[64] *Id.* at 1162.
[65] *Greater N.Y. Auto. Dealers Ass'n v. Dep't of Motor Vehicles*, 969 N.Y.S.2d 721, 727 (N.Y. Sup. Ct. 2013).

III.

The DMV raises two alternative grounds to uphold the application denial. Although these grounds were not relied on by the hearing officer or the director to deny Tesla's application, we address these alternative grounds as they were raised on appeal, involve only legal issues, and will guide the DMV on remand.

*First*, the DMV argues that if Tesla's vehicles are not "new motor vehicles" as defined under the Franchise Act, Tesla cannot obtain a dealer license to sell its cars under the Licensing Act. In other words, according to the DMV, an applicant is required to show that its vehicles are "new motor vehicles" under the Franchise Act to receive a license under the Licensing Act.

The argument is unpersuasive. The Franchise Act does not regulate a dealer's license – the Licensing Act does. The Franchise Act does not make it illegal to sell cars that are not "new motor vehicles." The Licensing Act does not require that the applicant satisfy the definition of "new motor vehicles" under the Franchise Act. The term "new motor vehicle" does not appear in the Licensing Act.

What the Licensing Act does provide is that "[n]o person, corporation, . . . or any other legal entity shall carry on or conduct the business of buying, selling or dealing in new or used vehicles unless issued a dealer's license by the [Division]."[66] Both "vehicle" and "dealer" are defined broadly in the Act to include Tesla and its

---

[66] 21 *Del. C.* § 6302(a).

19

cars. "Vehicle" is defined to mean "motor vehicles, trailers, . . . and any other device, in, upon, or by which any person or property is or may be transported or drawn upon a public highway."[67] "Dealer" is defined to mean any person or corporation "who is in the business of buying, selling, or exchanging . . . and/or . . . who offers to sell, sells, displays or permits the display for sale, of 5 or more vehicles within a 12-month period."[68] The definition of "dealer" further excludes a manufacturer "who sells or distributes vehicles to licensed dealers . . . if that manufacturer . . . does not sell vehicles to retail buyers."[69] Manufacturers like Tesla, that sell directly to retail customers and do not sell to licensed dealers, are considered "dealers" under the Licensing Act and can sell their new "vehicles" in Delaware if the other Licensing Act requirements are met.

*Second*, the DMV argues that Tesla does have contracts with its wholly owned subsidiaries in other states to sell its vehicles. Although not exactly clear, the DMV seems to argue that based on this fact, Tesla's vehicles are sold to "dealers," i.e., the out-of-state subsidiaries, making Tesla a "manufacturer" under the Franchise Act.

The definition of "dealer" under the Franchise Act does not include those who engage in contracts outside of Delaware to sell cars outside of Delaware. The "applicability" provision of the Franchise Act states that the Act is limited to "[a]ny

---

[67] *Id.* § 6301(9).
[68] *Id.* § 6301(2).
[69] *Id.* § 6301(3)f.

person who engages directly or indirectly in purposeful contracts *within this State* in connection with the offering or advertising for sale or has business dealers with respect to a new motor vehicle sale *within this State*."[70] Tesla's out-of-state subsidiaries are not "dealers" as defined by the Franchise Act.

## IV.

We reverse the Superior Court's judgment upholding the DMV's denial of Tesla's new dealer license application and remand for further proceedings consistent with this opinion.[71]

---

[70] 6 *Del. C.* § 4917 (emphasis added).

[71] At oral argument, Tesla argued a remand is not necessary as the DMV officer has completed the review and found no other basis to deny the application. This does not seem to be the case. *See* App. to Opening Br. at A328 ("Q. And so if this provision, [§ 4913(b)(14)], were to be held to be inapplicable to Tesla, would that . . . change your decision? A. I would review the entire application again and make my decision at that point. Q. Given it was the sole basis for your denial, what would you rely on? A. I would review the application again to make sure that everything was consistent with when it was submitted earlier this year, as I would with any other dealership."); *id.* ("Q. The specific denial criteria of one through nine, do any of them apply in this application? A. I don't have enough information about Title 4 . . . . We did not do an on-site visit . . . . I did not check the phone number . . . . Q. So you wouldn't obtain that information in making a decision to deny a company? A. I would have, if this was going to be approved, we would have gone through it. During the denial process, we didn't do site visits at the time. The application was submitted, so we wouldn't have checked the location, the physical location at that time.").